**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CONSTANTINE "DEAN" PATERAKIS;
CINDY PATERAKIS;**

        **Plaintiffs,**

-vs-                     Case No. 6:09-cv-269-Orl-19KRS

**SCHOOL DISTRICT OF BREVARD
COUNTY, FLORIDA, a political subdivision of
the State of Florida; RICHARD DIPATRI, in his
official capacity as superintendent of the School
District of Brevard County, Florida and in his
individual capacity; KAREN KISE, in her
official capacity as a Principal with the School
District of Brevard County, Florida and in her
individual capacity; RONALD BOBAY, in his
official capacity as an Area Superintendent with
the School District of Brevard County, Florida
and in his individual capacity; and ANDREA
ALFORD, in her official capacity as the Director
of the Office of District and School Security with
the School District of Brevard County, Florida
and in her individual capacity;**

        **Defendants.**
_____/

# ORDER

   This case comes before the Court on the following:

1. Motion of Defendants to Dismiss First Amended Complaint (Doc. No. 26, filed May 26, 2009);

2. Motion of Plaintiffs for Extension of Time to File a Response to Defendants' Second Motion to Dismiss (Doc. No. 27, filed June 15, 2009);

3.  Response of Defendants to Motion for Extension of Time to File a Response to Defendants' Second Motion to Dismiss (Doc. No. 28, filed June 18, 2009); and

4.  Response of Plaintiffs to Defendants' Motion to Dismiss (Doc. No. 29, filed June 24, 2009).

**Background**

This case arises out of the alleged termination of an untenured third-grade teacher, Plaintiff Constantine "Dean" Paterakis, for complaining after a school principal, Karen Kise, adjusted the grades that Paterakis gave to his students. The incident prompted Paterakis and his wife, Cindy Paterakis,[1] to file an eight-count Complaint against the School District of Brevard County, Florida ("the School District"), the District Superintendent, Richard DiPatri, Principal Karen Kise, the District Area Superintendent, Dr. Ronald Bobay, and the school security director, Andrea Alford. (Doc. No. 25, filed May 11, 2009.) Plaintiffs allege violations of 42 U.S.C. § 1983 (2006), violations of section 504 of the Rehabilitation Act, 29 U.S.C. § 794, violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82, common law battery, intentional infliction of emotional distress, and loss of consortium. (*Id.* ¶¶ 51-118.) Defendants move to dismiss Plaintiffs' claims. (Doc. No. 26.)

According to the Complaint, Paterakis was a state-certified third-grade teacher at West Melbourne School of Science ("WMSS") during the 2005-06 academic year.[2] (Doc. No. 25 ¶ 8.) The "Learning Director" of WMSS, Lisa McBee, encouraged Paterakis to "illegally change grades of students by deflating grades and under representing the earned grades by students taught by . .

---

[1] "Paterakis" will refer to Constantine "Dean" Paterakis unless otherwise designated.

[2] The facts are drawn from the allegations of the Amended Complaint and recited for contextual purposes only.

-2-

. Paterakis . . . ." (*Id.* ¶ 10.) Some unnamed students had unnamed "impairments or disabilities" that, according to the Amended Complaint:

> received protections Section 504 of the Rehabilitation Act, 29 U.S.C. 794 and the implementing regulation 34 Code of Federal Regulations Part 104 or the protections of IDEA, 20 USC 1400 et seq. and the implementing regulations 34 Code of Federal Regulations Part 300 and 303 and Florida Educational Equity Act, 1000.05 Florida Statutes and Florida Administrative Code Chapter 6A-19.

(*Id.* ¶ 14 (punctuation and legal citations as in original).) Principal Kise also pressured Paterakis to change the grades. (*Id.* ¶ 11). When he refused, Kise "promised" Paterakis that she would make sure he did not get a regular teaching job within the School District. (*Id.* ¶ 22.) Paterakis was given "an unusually harsh performance review" that year, although it is unclear from whom. (*Id.* ¶ 32.) Ultimately:

> Defendants non-renewed Plaintiff's annual contract for teaching and has [sic] refused to allow the Plaintiff to substitute as a teacher, including at preferred schools, as well as has [sic] refused reasonable interviews and hires of [sic] Plaintiff Dean Paterakis in retaliation for Plaintiff's advocating for the interest of impaired and disabled students protected by Section 504 and IDEA 2004 and the interests of students whose rights accorded by state law were violated.

(*Id.* ¶ 34 (legal citations as in original).)[3] Paterakis alleges that this conduct violated his First Amendment right to freedom of speech and constituted retaliation in violation of section 504 of the Rehabilitation Act and various provisions of the IDEA. (*Id.* ¶¶ 51-58, 74-94.)

The Amended Complaint also alleges that Paterakis was the subject of two batteries. The first incident occurred when Paterakis was attending a job fair and Dr. Bobay "came over to Dean Paterakis, put his hands on the Plaintiff in a gruff, mean and stern manner and kept his hands on the

---

[3] The use of the generic label "Defendants" is particularly confusing because the context of this paragraph suggests that "Defendants" does not refer to every Defendant named in this action.

Plaintiff Dean Paterakis as Dr. Bobay strong armed Plaintiff and walked Plaintiff out of the job fair." (*Id.* ¶ 45.) The second incident occurred when Paterakis arrived at a school board meeting and "Alford . . . searched Dean Paterakis and grabbed his back pack and searched it intending to cause harmful physical contact with Dean Paterakis, Plaintiff." (*Id.* ¶ 68.) Paterakis also alleges that this second incident constituted an unreasonable search and seizure under the Fourth Amendment. (*Id.* ¶¶ 95-100.) According to the final Count of the Amended Complaint, the "actions and behaviors of each Defendant outlined above [in the Amended Complaint] was [sic] intentional" and constituted the tort of intentional infliction of emotional distress. (*Id.* ¶¶ 113-18.) In addition, Cindy Paterakis seeks loss of consortium damages arising from the "bullying and other violations of law done against Dean Paterakis . . . ." (*Id.* ¶ 104.)

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ___, 127 S. Ct. 2499, 2509 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 127 S. Ct. at 2509 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

I.  **Motion to Extend Time**

Several days after Plaintiffs' Response to the Motion to Dismiss was due, Plaintiffs' counsel, Ms. Janice L. Jennings, filed a Motion seeking an extension of time based on unspecified "medical concerns." (Doc. No. 27 at 1.) Ms. Jennings certified in the Motion that she was "unable to reach

Plaintiff's counsel to get his position on this motion."[4] (*Id.*) Because Ms. Jennings is "Plaintiff's [sic] counsel," presumably she meant to say that she could not reach Defendants' counsel. Regardless, the Motion is deficient in several respects. First, the Motion itself is untimely, and Plaintiffs' counsel was therefore required to meet the more stringent requirements of Federal Rule of Civil Procedure 6(b) for the extension of a deadline that has passed. *Williams v. Wyndham World Wide Corp.*, No. 6:08-cv-842-Orl-19KRS, 2009 WL 1396271, at *2 (M.D. Fla. May 18, 2009). Second, the Motion fails to comply with Local Rule 3.01(g) which, by its plain text, requires more than simply stating that counsel could not "reach" opposing counsel prior to filing the motion. *Id.* ("A certification to the effect that opposing counsel was unavailable for a conference before filing a motion is insufficient to satisfy the parties' obligation to confer.").

Normally, the Court would strike Plaintiffs' Response, direct counsel to comply with Local Rule 3.01(g), and instruct her to demonstrate that her belated filing was excusable under Federal Rule of Civil Procedure 6(b). That, however, is unnecessary for two reasons. First, the Response is not particularly helpful to Plaintiffs' positions,[5] and it leaves most of Defendants' arguments completely unaddressed.[6] Second, for the reasons stated below, the Court will grant Defendants' Motion, and therefore the belated Response causes no prejudice.

---

[4] Defendants' counsel avers that he has no record of being contacted by Plaintiffs' counsel by phone, email, fax or otherwise. (Doc. No. 28.)

[5] Among other problems, the Response lacks complete sentences, (Doc. No. 29 at 1 ("While it may be duplicatious [sic] or superfleous [sic] to both the school district and officials in their official capacities."), and fails to give reporter citations for the cases which it discusses, (*id.* at 2 ("In *Sturm v. Rocky Hill Board of Education*, , a teacher stated . . . .")).

[6] The Response discusses the First Amendment and Rehabilitation Act claims while appearing to abandon the IDEA claim. (Doc. No. 29 at 1-3.) As to Defendants' other arguments for dismissal, the Response simply states: "All the remaining claims are well pled and state each element required for stating a claim under each count." (*Id.* at 4.)

**II. Motion to Dismiss**

Defendants make arguments for dismissal related both to pleading problems and substantive issues of law. The Court will primarily address the pleading problems in this Order, but it will also address the substantive issues of law to the extent Plaintiffs' allegations are clear enough to permit legal analysis.

**A. Section 1983 First Amendment Claims**

At the threshold, the Court notes that Count I is so poorly pled that it is impossible to tell against whom the claims are asserted. Paragraph 54 alleges that "Defendants" engaged in retaliatory conduct, but Paragraph 57 alleges that "Defendant" caused an injury to Paterakis. Similarly, Plaintiffs fail to specify whether the claims are against the various Defendants in their individual capacities, the School District, or both. These pleading errors, alone, require dismissal of the Count under Federal Rules of Civil Procedure 8(a) and 10(b). *Sada v. City of Altamonte Springs*, No. 6:08-cv-1368-Orl-19GJK, 2008 WL 5110799, at *5-6 (M.D. Fla. Nov. 25, 2008) (dismissing claims under Federal Rule of Civil Procedure 8(a)(2) because the plaintiff failed to specify whether the claims were individual or official capacity claims).

Turning to the substance of the claim, Paterakis contends that he engaged in protected speech by advocating that his students deserved the grades he gave them. The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006) (citations omitted). The issue here is whether Paterakis spoke as a citizen when he argued against "deflating" his students' grades.

As a general matter, a government entity may not discipline a public employee in retaliation for protected "citizen speech." *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1283 (11th Cir.

2006); *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001). An employee's exercise of his right to freedom of speech is not absolute, however. *E.g., Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1157-59 (11th Cir. 2002) (finding that a police officer's "creation and dissemination of a virtually secret plan to overthrow the existing police administration and put himself and his friends in charge" was not protected speech). "The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern[,] and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Because of this governmental interest, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004).

The four-step test of *Pickering* and *Connick v. Myers*, 461 U.S. 138, 145-54 (1983), applies to claims that a public employee's First Amendment rights were violated for work-related speech. *See also City of San Diego*, 543 U.S. at 80; *Brochu*, 304 F.3d at 1157; *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005); *McKinley v. Kaplan*, 262 F.3d 1146, 1149-50 (11th Cir. 2001). This test examines (1) whether the employee's speech is fairly characterized as constituting speech as a citizen on a matter of public concern; (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the employer has shown by a preponderance of evidence that it would have made the same employment decision in the absence of the protected conduct. *E.g.*, *Battle v. Bd. of Regents*, 468 F.3d 755, 759-60 (11th Cir. 2006); *Chesser*, 248 F.3d at 1122-23; *Beckwith v. City of Daytona Beach Shores*,

58 F.3d 1554, 1563-64 (11th Cir. 1995) (citing *Bryson v. City of Waycross*, 888 F.2d 1562, 1565-66 (11th Cir. 1989)). The first two elements of this test are "questions of law designed to determine whether the employee's speech is protected by the First Amendment." *Beckwith*, 58 F.3d at 1564. The final two elements are questions of fact "designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." *Id.*; s*ee also Battle*, 468 F.3d at 760.

The first *Pickering* step is the most relevant to Defendants' arguments for dismissal. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Construing *Garcetti*, the Eleventh Circuit has held that courts should decide "at the outset (1) if the government employee spoke as an employee or citizen and (2) if the speech addressed an issue relating to the mission of the government employer or a matter of public concern." *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007) (citation and footnote omitted).

Paterakis' claim, in its current form, clearly fails the first step of the *Pickering* analysis. As a public school teacher, Paterakis' very job was to assign grades to his students. If one imagines a continuum of citizen speech on one hand and employee speech on the other, Paterakis' grade-related speech falls squarely on the employee side. Even though the issue of fair grading could be characterized as a matter of concern for the parents of Paterakis' students, employee speech criticizing the performance of the employee's agency is not characterized as "citizen speech." *Boyce*, 510 F.3d at 1342 (speech related to the mission of the government employer is not citizen speech). Doing so would eviscerate the distinction between "citizen" and "employee speech," especially because many First Amendment retaliation claims arise in exactly this context. *E.g.*,

*Garcetti*, 547 U.S. at 420-25 (finding that a district attorney who criticized the decision to continue a prosecution in light of an apparent false affidavit was speaking as an employee); *Burton v. City of Ormond Beach, Fla.*, 301 F. App'x 848, 853 (11th Cir. 2008) (finding that a park manager's email, which concerned the performance of several city agencies and was sent to both fellow employees and members of the public, constituted employee speech even though it addressed issues such as hazards in public parks and compliance with sunshine laws).[7] In sum, there are no allegations in the Amended Complaint concerning speech of a citizen nature, and therefore Paterakis has not stated a claim under section 1983 for the violation of his First Amendment rights.

**B.   Battery Claims**

Defendants object to the battery counts to the extent they are maintained against Dr. Bobay and Alford in their official capacities. According to Defendants, official capacity claims against these employees would be equivalent to claims against the School District, and for the sake of clarity, Plaintiffs should specify whether the claim is against the School District, the individual defendant, or both. The Court agrees. Accordingly, these claims will be dismissed with leave to amend to specify whether the claims are asserted against these Defendants individually, against the School District, or both.[8] *See Sada*, 2008 WL 5110799, at *5-6.

---

[7]   Of course, as the *Garcetti* Court noted, the foreclosure of a section 1983 action does not mean that the employee is prohibited from pursuing remedies under various "whistle-blower" statutes. *Garcetti*, 547 U.S. at 425.

[8]   For the sake of clarity, Plaintiffs shall make this distinction in every Count.

## C. Rehabilitation Act Claims

Paterakis asserts claims against the School District, DiPatri, and Kise for retaliation under section 504 of the Rehabilitation Act. (Doc. No. 25 ¶¶ 74-85.) Defendants argue that section 504 provides no cause of action in this context.

As a general matter, section 504 provides a cause of action for retaliation where such an action would be available under the retaliation provision of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a) (2006). *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997). "To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) he participated in a statutorily protected activity or expression; (2) he suffered an adverse action; and (3) the adverse action was related to the protected activity." *Albra v. City of Ft. Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003)).

At the threshold, Paterakis' retaliation claims fail because he has not alleged sufficient facts to establish that any of his students had a disability. Paterakis alleges, in conclusory fashion, that some unnamed students had unnamed disabilities covered by various disability laws. (Doc. No. 25 ¶ 14.) This allegation is an example of type of legal "conclusion" that courts are instructed to ignore when evaluating the sufficiency of a complaint. *Iqbal*, 129 S. Ct. at 1949.

Regarding the specific claims in this case, the Eleventh Circuit has extended section 504 to situations where a teacher has alleged adverse treatment from administrators in retaliation for advocating for disability-related rights afforded to students under the federal law. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (teacher alleged that she was fired for commenting about the disciplinary actions taken against a disabled child); *Settlegoode v. Portland*

*Public Schs.*, 371 F.3d 503, 509-10 (9th Cir. 2004) (teacher alleged that her contract was not renewed because she criticized facilities for disabled students). The analysis can end here, however, because Paterakis' claims differ from these cases in a very obvious way. Unlike *Mize* and *Settlegoode*, Paterakis did not advocate for the disability-related rights of his students; rather, he advocated for a separate issue, the absence of grade inflation, on behalf of some students who happened to be disabled. Paterakis advocated for this same issue on behalf of non-disabled students, and there is simply no way to infer from the Amended Complaint that Paterakis' defense of his disabled students' grades had anything to do with the fact that they were disabled. As a result, the alleged adverse action that occurred in this case could not have been prompted by Paterakis engaging in protected conduct under the Rehabilitation Act, and therefore he has not stated a claim for retaliation.[9]

### D. IDEA Claims

Paterakis acknowledges that he has not complied with the exhaustion procedures necessary to bring an IDEA claim. (Doc. No. 29 at 2.) Accordingly, the IDEA claims are dismissed without prejudice.

### E. Section 1983 Fourth Amendment Claims

Defendants argue that the School District cannot be liable for Afford's alleged unlawful search unless Paterakis establishes that the search was at the behest of an official policy or reflected

---

[9] Although not specifically raised by Defendants with respect to the section 504 claim, Paterakis' claim may be premature because he appears to have failed to exhaust his administrative remedies. *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1157-58 & n.3 (11th Cir. 2006) ("[W]hether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings.").

a custom or practice of the School District. (Doc. No. 26 at 13 (citing *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489-90 (11th Cir. 1997).) Defendants also argue that DiPatri's alleged knowledge of Alford's conduct is not a basis to hold DiPatri individually liable. Plaintiffs offer no specific response to these arguments.

Both of Defendants' arguments are correct. The School District can be held liable only if Paterakis "shows that a 'custom' or 'policy' of the [School District] was the 'moving force' behind the constitutional deprivation." *Sewell*, 117 F.3d at 489. Although Plaintiffs allege that the District "received *many* complaints about [Alford's] consistent 'Barney Fife' knee-jerk response to matters brought before her without due consideration of constitutional rights," (Doc. No. 25 ¶ 97 (emphasis in original)), they do not allege facts demonstrating that Alford's specific conduct reflected a custom or policy of the School District, s*ee id.* Further, Paterakis offers absolutely no basis to hold DiPatri individually liable for Alford's conduct.

### F. Intentional Infliction of Emotional Distress Claims

The School District, Superintendent DiPatri, Principal Kise, Dr. Bobay, and Alford argue that this Count should be dismissed because: (1) the claim is not supported by factual support, (2) and a claim for intentional infliction of emotional distress under Florida law cannot be maintained against a government entity. (Doc. No. 26 at 15.) Paterakis offers no specific response to their arguments.

Defendants are correct. The Court cannot ascertain whether the threshold for establishing the tort of intentional infliction of emotional distress is met because Paterakis fails to specify the facts on which he relies: He neither incorporated factual allegations into the Count nor recited any facts in the Count. Further, this particular tort claim cannot be maintained against the School

District. Fla. Stat. § 768.28(9) (2008) ("The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith . . . ."); *Williams v. City of Minneola*, 619 So. 2d 983, 988 (Fla. 5th DCA 1993) (finding that the conduct of an government employee required to satisfy the threshold for intentional infliction of emotional distress would necessarily constitute willful and wanton conduct under section 768.28(9)).

### G. Loss of Consortium

Defendants object to the loss of consortium claim to the extent it appears, based on sloppy pleading, to seek recovery on Constantine "Dean" Paterakis' behalf. (Doc. No. 26 at 13-14.) As Defendants point out, even though various states have redefined the concept of marriage in recent years, none has allowed a person to marry himself. (*Id.*) Accordingly, this claim is dismissed to the extent it seeks recovery on Constantine "Dean" Paterakis' behalf. Furthermore, Plaintiffs have not alleged compliance with the notice provisions of section 768.28 for maintaining this claim against a political subdivision of the state. *E.g.*, *Brower v. State Dept. of Natural Res.*, 698 So. 2d 568, 570-71 (Fla. 2d DCA 1997) (describing the notice requirement).

### Conclusion

The Motion of Defendants to Dismiss First Amended Complaint (Doc. No. 26, filed May 26, 2009) is **GRANTED**. The Amended Complaint (Doc. No. 25, filed May 14, 2009) is **DISMISSED without prejudice**. Plaintiffs are given leave to file within eleven days from this Order a Second Amended Complaint that complies with this Order. Failure to comply with this Order may result in dismissal with prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 3, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record